35 F.3d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Saul ROSENZWEIG, Plaintiff-Appellee,
v.
FIGGIE INTERNATIONAL, INC., Defendant-Appellant.
 No. 93-55189.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1994.
Decided Aug. 31, 1994.
 
 Before: BROWNING, FARRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We agree with Figgie International, Inc., that the district court reversibly erred by excluding "evidence relating to ... [t]he fact that [Rosenzweig] was terminated because of his alleged failure to adequately perform his duties as an employee of [Figgie]." (ER 2:313-15.) Contrary to Rosenzweig's assertion, Figgie preserved this issue for appeal. The statements by Figgie on which the district court based its ruling do not justify the wholesale exclusion of evidence offered to show other reasons for firing Rosenzweig. At most, the company's statements are relevant in assessing whether its unstated reasons for firing Rosenzweig are credible.
 
 
 3
 The exclusion of performance evidence was not harmless. Although Figgie was allowed to show the shortcomings of its communications division, it was repeatedly barred from asking whether Rosenzweig was responsible for the division's failures. Such inquiries were highly relevant to the company's defense. See, e.g., Knights v. Hewlett Packard, 281 Cal.Rptr. 295, 298 (Cal.Ct.App.1991) (deficient performance constitutes good cause for termination). We reverse and remand for a new trial on the two claims alleging Figgie lacked cause to terminate Rosenzweig. See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 780 (9th Cir.1990) (reversal necessary where abusive evidentiary ruling probably affected the verdict).
 
 
 4
 We consider other issues relating to the two wrongful termination claims only to provide guidance on remand: The district court did not reversibly err in excluding evidence of wrongdoing--as opposed to Rosenzweig's poor performance--based on the discovery agreement (ER 1:156), and on Figgie's amendment of its answer. Nor did the district court abuse its discretion in excluding evidence of the income and expenses of Rosenzweig's personal corporations. We are not persuaded this evidence supported a coherent theory for reducing Rosenzweig's damages. It was properly excluded under Federal Rule of Evidence 403 to avoid confusing the jury. On remand, Figgie is free to show the evidence supports a coherent theory of mitigation, and the question of admitting the evidence will again be within the sound discretion of the district court.
 
 
 5
 Finally, the following evidence was sufficient to support a finding that Rosenzweig likely would have continued at Figgie for another 12 years but for the breach of his employment contract: the Department of Labor Statistics; the statement of Figgie's chairman that the job was Rosenzweig's for as long as he wanted it; the absence of evidence that Rosenzweig could not continue to work until age 72; Rosenzweig's wide-ranging business activities, suggesting that he would continue to work; and Rosenzweig's testimony that Figgie Communications could have expected success in subsequent years.
 
 
 6
 As to the remaining four claims on which Rosenzweig prevailed, Figgie contends the evidence was not sufficient to support the jury's negative answer to the question: "Is the June 15, 1983 Stock Option Committee resolution ... genuine[,] i.e., did the Stock Option Committee adopt the resolution on June 15, 1983?" (ER 2:360.) Figgie invokes a presumption favoring the validity of corporate resolutions, but the jury was not instructed on this presumption. Accordingly, we will uphold the jury's finding if the evidence, viewed in the light most favorable to Rosenzweig, is "such ... as reasonable minds might accept as adequate to support a conclusion." Sanders v. Parker Drilling Co., 911 F.2d 191, 193-94 (9th Cir.1990). We conclude that it was.
 
 
 7
 Twenty days after the effective date of the 1983 stock option plan, Figgie's board of directors unanimously authorized corporate officers to take necessary steps to "[c]larify the fact that if the Corporation does not elect to exercise its rights of repurchase of shares ..., the restrictions on such shares shall lapse on the 91st day after such right arose." (SER 1:108.) Yet one month earlier the stock option committee, which was composed of three directors, purportedly stripped all terminated employees of their rights to receive stock held in escrow. The contradiction in the resolutions of June 15 and July 20, 1983, provides sufficient ground on which to uphold the jury's finding that the former resolution was not genuine. While the board of directors may have enacted the July 20 resolution for tax purposes, the purpose was to benefit departing employees by making clear exactly when escrowed stock became theirs. The contradiction in the two resolutions thus remains. Further support for the jury's finding exists in Rosenzweig's phone call to Dale Coenen, and the testimony of an attorney who worked for Figgie between 1982 and 1987. As Rosenzweig points out, the testimony of Figgie's witnesses in support of the June 15, 1983 was compromised.
 
 
 8
 Because the evidence supports the jury's verdicts on the conversion and breach of stock contract claims, and on the finding underlying the recovery of punitive damages, we need not consider Figgie's attack on Rosenzweig's other stock-related claims of constructive fraud and violation of Rule 10b-5.
 
 
 9
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 The parties are familiar with the facts and issues; we will not repeat them here. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3