97 F.3d 1463
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jerry WADDY, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & CO. and Mike Spindler, Defendant-Appellee.
 No. 94-16393.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided Sept. 24, 1996.
 
 1
 Before: WALLACE, and THOMPSON, Circuit Judges and SEDWICK,* District Judge.
 
 MEMORANDUM
 
 2
 Jerry Waddy ("Waddy") appeals the district court's summary judgment dismissing the remaining claims (wrongful termination and breach of contract) against his employer, Sears, Roebuck ("Sears"). The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over Waddy's timely appeal under 28 U.S.C. § 1291. We conclude, as the district court did, that the evidence undisputedly shows that Waddy was terminated for legitimate business reasons--his extremely low productivity--and not for any reason violative of public policy. Therefore, we affirm.
 
 I. Standard of Review
 
 3
 This court reviews a grant of summary judgment de novo, to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). De novo review means that this court "view[s] the case from the same position as the district court." Nevada Land Action Ass'n v. United States Forest Serv., 8 F.3d 713, 716 (9th Cir.1993) (internal quotation omitted). The nonmoving party's evidence is to be taken as true, and all inferences are to be drawn in the light most favorable to the nonmoving party. Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1288 (9th Cir.1987). The court must not weigh the evidence or determine the truth of the matter. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 II. Wrongful Termination
 
 4
 Waddy argues that the district court erred because the evidence he submitted and the testimony he provided are sufficient to establish a claim that Sears terminated him because he refused to commit illegal acts. More specifically, Waddy argues that his low productivity was caused by his refusal to take illegal shortcuts in accordance with his supervisor's advice, which shortcuts indirectly were required by Sears' unreasonably stringent time requirements.
 
 
 5
 "An employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal.Lab.Code § 2922. This statute creates a presumption that an employment contract is terminable at will. Pugh v. See's Candies, Inc., 171 Cal.Rptr. 917, 921 (Ct.App.1981). However, as the court stated in Pugh:
 
 
 6
 "The mere fact that a contract is terminable at will does not give the employer the absolute right to terminate it in all cases" ( Patterson v. Philco Corp. (1967) 252 Cal.App.2d 63, 65, 60 Cal.Rptr. 110.) Two relevant limiting principles have developed, one of them based upon public policy and the other upon traditional contract doctrine. The first limitation precludes dismissal "when an employer's discharge of an employee violates fundamental principles of public policy" ( Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 610 P.2d 1330), the second when the discharge is contrary to the terms of the agreement, express or implied.
 
 
 7
 Pugh, 171 Cal.Rptr. at 922. An at-will employee may maintain a tort cause of action for wrongful discharge by showing that the employer's motivation for the discharge contravenes some substantial public policy principle. Tameny v. Atlantic Richfield Co., 164 Cal.Rptr. 839, 845 (Cal.1980). The employee must allege that he was discharged for performing an act public policy would encourage, or for refusing to do something public policy would condemn. Gantt v. Sentry Ins., 4 Cal.Rptr.2d 874 (Cal.1992); Shapiro v. Wells Fargo Realty Advisors, 199 Cal.Rptr. 613 (Ct.App.1984).
 
 
 8
 Here, the alleged illegal act is expressed in the California Consumer Legal Remedies Act, which prohibits unfair acts and deceptive practices in connection with the sales of services to a consumer. Cal.Civ.Code § 1750 et seq. Waddy suggests that, as required in retaliation actions under Title VII, 42 U.S.C. § 2000e, once he establishes a prima facie case of retaliation, the burden of proof should shift to Sears to articulate legitimate, nondiscriminatory reasons for the adverse employment decision, at which point he may prove that the proffered reasons are a pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793, 93 S.Ct. 1817, 1820 (1973). Citing Balog v. LRJV, Inc., 250 Cal.Rptr. 766 (Ct.App.1988), Waddy also argues that illegal reasons played at least a substantial role in the decision to terminate him, and thus, Sears had mixed motives in terminating him sufficient to defeat summary judgment.
 
 
 9
 In California, courts have applied a burden shifting analysis in wrongful termination cases. For example, in Pugh, 171 Cal.Rptr. at 927, where plaintiff demonstrated a prima facie case of wrongful termination in violation of an employment contract, the court held that the burden shifted to the employer to come forward with evidence as to the reason for the termination. Plaintiff then "may attack the employer's offered explanation, either on the ground that it is pretextual (and that the real reason is one prohibited by contract or public policy), or on the ground that it is insufficient to meet the employer's obligations under contract or applicable legal principles." Pugh, 171 Cal.Rptr. at 927 (citation omitted). Still, plaintiff bears the ultimate burden of proving he was terminated wrongfully. Id. (citing Cleary v. American Airlines, 168 Cal.Rptr. 722 (Ct.App.1980); cf. McDonnell Douglas, 411 U.S. at 802-807, 93 S.Ct. at 1817, 1824-26).
 
 
 10
 No California court has applied the McDonnell Douglas Title VII analysis in a case of wrongful termination in violation of public policy; the Pugh court did not reach that point in analyzing plaintiff's argument based on violation of public policy, because it concluded that plaintiff had not established a prima facie case. However, because plaintiff had established a prima facie case of violation of the employment contract, the court did shift the burden of proof with respect to that claim. It is reasonable to infer that the court would have shifted the burden, had plaintiff established a prima facie case of violation of public policy. We find it both helpful and proper to apply a burden-shifting analysis in this case.
 
 
 11
 Waddy has presented a prima facie case that he was terminated in violation of public policy. He testified that his supervisor suggested he increase his productivity by taking illegal shortcuts, and the documents he submits at least suggest that Sears set certain productivity standards with intent to force its employees to engage in fraud. Sears also has met its burden by coming forward with a legitimate business reason for terminating Waddy. Waddy himself admits he was not a competent mechanic, and he was informed on several occasions over a period of over a year that his productivity was low and that one of his managers recommended that he be terminated. There is no evidence to dispute Sears' evidence or to show that Waddy could have performed adequately under different time standards.
 
 
 12
 With respect to Spindler's suggestion or instruction that Waddy take illegal shortcuts, there is no evidence that Spindler, a non-managerial employee, had authority to terminate Waddy or that he played any part in terminating Waddy. California case law indicates that if the individual who violated the public policy or suggested the employee commit illegal acts was not in a position to terminate the employee, then the employee cannot show that the firing was pretextual. See, e.g., Wilkerson v. Wells Fargo Bank, Nat'l Ass'n, 261 Cal.Rptr. 185, 191 (Ct.App.1989). Nor is there any evidence that anyone in a position to terminate Waddy was aware that he was asked, and refused, to take shortcuts. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986) (mere scintilla of evidence supporting nonmoving party's position will not suffice to raise genuine issue of material fact for trial). Waddy has failed to demonstrate that even part of Sears' motive to terminate him was illegal.
 
 III. Breach of Contract
 
 13
 Waddy argues that the length of his employment at Sears and certain well-known policies at Sears created an implied contract that he would be terminated only for cause, and he was not terminated for good cause. We disagree.
 
 
 14
 The at-will presumption may be overcome by evidence that the employer and employee impliedly agreed to termination only for cause. Factors creating such an implied agreement include "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." Foley v. Interactive Data Corp., 254 Cal.Rptr. 211, 225 (Cal.1988) (quoting Pugh, 171 Cal.Rptr. at 917). See also Camp v. Jeffer, Mangels, Butler, Marmaro, 41 Cal.Rptr.2d 329, 334 (Ct.App.1995); Knights v. Hewlett Packard, 281 Cal.Rptr. 295, 297 (Ct.App.1991).
 
 
 15
 The employment application, which Waddy signed, the "Associate Orientation" handbook and the "Associate Handbook" all include language indicating that either Sears or Waddy may terminate at any time, with or without cause. Waddy testified that he understood he could quit his job any time. Waddy's unsubstantiated impression that Sears was a family, and the mere duration of his employment with Sears, are not sufficient to create a triable issue of fact as to the existence of an implied-for-cause contract contradicting the express at-will provision contained in his executed employment agreement. See Hoy v. Sears, Roebuck & Co., 861 F.Supp. 881, 887 (N.D.Cal.1994); Miller v. Pepsi-Cola Bottling Co. a Div. of Pepsico, Inc., 259 Cal.Rptr. 56, 58 (Ct.App.1989); Tollefson v. Roman Catholic Bishop of San Diego, 268 Cal.Rptr. 550, 557 (Ct.App.1990). Furthermore, California courts have held that, because "there cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results," allegations of an implied for-cause contract cannot rebut the employee's status as an at-will employee. See Rochlis v. Walt Disney Co., 23 Cal.Rptr.2d 793, 798 (Ct.App.1993); Shapiro, 199 Cal.Rptr. at 621; Malmstrom v. Kaiser Aluminum & Chem. Corp., 231 Cal.Rptr. 820 (Ct.App.1986).
 
 
 16
 Where the undisputed evidence establishes that an employer had cause to terminate an employee, the employer is entitled to summary judgment on a breach of implied contract claim. See, e.g., Hoy, 861 F.Supp. at 887-88; Knights, 281 Cal.Rptr. at 296 (Ct.App.1991); Palucki v. Sears, Roebuck, 879 F.2d 1568, 1571 (7th Cir.1989).
 
 
 17
 The terms "just cause" and "good cause," "as used in a variety of contexts ... have been found to be difficult to define with precision and to be largely relative in their connotation, depending upon the particular circumstances of each case." ( R.J. Cardinal Co. v. Ritchie (1963) 218 Cal.App.2d 124, 144, 32 Cal.Rptr. 545.) Essentially, they connote "a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power." (Id., at p. 145, 32 Cal.Rptr. 545.) Care must be taken, however, not to interfere with the legitimate exercise of managerial discretion. "Good cause" in this context is quite different from the standard applicable in determining the propriety of an employee's termination under a contract for a specified term. (Cf. Lab.Code, § 2924.)
 
 
 18
 Pugh, 171 Cal.Rptr. at 927-28 (footnote omitted). Sears has submitted several documents indicating that, for months prior to Waddy's termination, Sears management provided written reviews and verbally informed Waddy that his job was in jeopardy and offered suggestions as to how he might improve. Waddy admits that his position in the battery room was eliminated, that he had no experience in mechanics, and that he knew there were training films in the auto department but did not take advantage of them. Waddy has put forth no evidence that he could have performed his job competently. To the contrary, he testified in his deposition that he was not competent to do the job.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable John W. Sedwick, United States District Judge, District of Alaska, sitting by designation