Martin **JIMENO,** Plaintiff–Appellant–Cross–Appellee,

v.

**MOBIL OIL CORPORATION,** Defendant–Appellee–Cross–Appellant.

Nos. 93–55768, 93–55850.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1994.

Decided Sept. 28, 1995.

Mary E. McInerny, Long Beach, California, for plaintiff-appellant.

Joel E. Krischer, William C. Bottger, Jr., Latham & Watkins, Los Angeles, California, for defendant-appellee.

Before D.W. NELSON, WILLIAM A. NORRIS and BOGGS,\* Circuit Judges.

## OPINION

D.W. NELSON, Circuit Judge:

Appellant/Cross–Appellee Martin Jimeno appeals the district court's judgment as a matter of law in favor of Appellee/Cross–Appellant Mobil Oil Corporation ("Mobil") on Jimeno's claim of employment discrimination because of a physical disability, in violation of California's Fair Employment and Housing Act ("FEHA"), Cal.Gov't Code §§ 12920–12940. The district court found that Jimeno had established a prima facie case of discrimination, but it held that section 301(a) of the federal Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), preempts Jimeno's FEHA claim. The district court also ruled that Jimeno's claim is barred by the exclusivity provisions of California's workers' compensation laws, Cal.Labor Code §§ 132a & 3600–3602. Jimeno appeals these rulings and the district court's decision that the evidence was sufficient as a matter of law to support applicability of the workers' compensation provisions to Jimeno's impairment. In addition, Jimeno appeals the district court's denial of his motion to alter judgment to find Mobil liable as a matter of law and for a new trial on the issue of damages, contending that Mobil has not produced legally sufficient evidence to support its statutory affirmative defenses pursuant to the FEHA. Jimeno also challenges various evidentiary rulings excluding testimony and documents. Mobil cross-appeals the district court's finding that Jimeno established a prima facie case pursuant to the FEHA.

We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, vacate in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

Jimeno began working for Mobil at its Torrance, California refinery on December 27, 1972. Throughout his employment at Mobil, Jimeno was a member of the Oil Chemical and Atomic Workers' International Union and its Local Union 1–547 (the "Union"). Pursuant to the terms of the collective bargaining agreement, Jimeno submitted a bid for a new position in early 1984 and became a mechanic in the Torrance Refinery garage. He held that position throughout the remainder of his employment with Mobil.

On Saturday, January 20, 1990, Jimeno awoke with severe lower back pain, which caused him to take a short-term medical disability leave from January 23, 1990 until April 17, 1990. After his private doctor, Dr. Quinio, suggested that the back problem might be a work-related injury, Jimeno met with Dr. Wald of Mobil's medical staff on March 22, 1990 and discussed filing a claim for benefits under workers' compensation. As provided by the collective bargaining agreement, Dr. Wald referred Jimeno to an outside doctor, Dr. Dallas, who determined that Jimeno suffered from degenerative disc disease and released Jimeno to return to work on April 16, 1990.

Jimeno performed his job as a mechanic without further problems from April 17, 1990 until May 31, 1990, when Mobil placed him on a medical leave of absence after receiving three supplemental reports from Dr. Dallas. The first, dated April 16, 1990, reported the results of a CT scan that revealed for the first time that Jimeno suffered from spondylolysis, a congenital or developmental defect of the spinal vertebrae in which the bone does not form completely so that one or more vertebrae consist of two separate parts. The CT scan reconfirmed that Jimeno also suffered from degenerative disc disease. As a result of the new information, the report suggested that a job analysis would be appropriate. The second report, dated April 30, 1990, noted Dr. Dallas' understanding that Jimeno's treatment in Dallas' office had been authorized as treatment for a work-related injury, and released him to work without restriction. The third report, dated

\* The Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

May 23, 1990, indicated that, because of the abnormal CT scan, Jimeno might be "at risk" if he performed heavy work with repetitive bending or lifting and suggested that a job analysis be performed. The report also released Jimeno to perform regular work without job restrictions.

Mobil then hired an outside consultant to prepare a job analysis of the mechanic's position. After reviewing the job analysis, Dr. Dallas reported to Mobil on September 24, 1990 that Jimeno should be deemed a "Qualified Injured Worker" under California's workers' compensation laws. Mobil arranged for vocational rehabilitation training and informed Jimeno on May 14, 1991, in accord with its undisputed policy of terminating "unfit" workers,[1] that he would be administratively terminated or placed on unpaid leave at the expiration of his short-term disability benefits.

Shortly thereafter, in May and June of 1991, Mobil received two additional orthopedic evaluations of Jimeno from Dr. Van Pelt, a physician selected by Jimeno's attorney. Dr. Van Pelt found that because of the spondylitic defect, there was a potential for injury from repetitive lifting of heavy objects. Mobil then wrote to Jimeno on August 8, 1991, to inform him that he had been administratively terminated, effective July 29, 1991.

On August 28, 1991, the Union filed a grievance in Jimeno's behalf, alleging that his termination violated the terms of the collective bargaining agreement. Pursuant to the grievance discussions, Jimeno returned to Dr. Dallas for a reevaluation. Mobil refused reinstatement after Dr. Dallas reported in June 1992 that Jimeno's X-rays continued to show degenerative disc disease and spondylolysis. The Union initially demanded arbitration when Mobil denied the grievance, but later withdrew from the grievance process.

### B. PROCEDURAL POSTURE

Jimeno filed at least one claim for workers' compensation benefits, and he also filed a

petition before the California Workers' Compensation Appeals Board for increased compensation for violation of Labor Code § 132a, which prohibits discrimination against workers who suffer work-related injury, and Labor Code § 4553, which increases compensation when an employer engages in willful misconduct. The petition before the workers' compensation board was still pending at the time of oral argument before this court.

On May 20, 1991, Jimeno filed a complaint with the California Department of Fair Employment and Housing alleging discrimination because of a physical handicap. Jimeno claimed that Mobil terminated him because of his non-work-related developmental defect, which required only minimal accommodation to avoid a risk of injury, and not, as Mobil asserted, because of a work-related back injury that might occasionally be aggravated by his continuing to work as a mechanic. After receiving a right-to-sue letter, Jimeno brought suit pursuant to the FEHA in California state court. Mobil removed the case to federal district court where a jury trial commenced on January 12, 1993.

The district court concluded that Jimeno had met his burden of proving a prima facie case of discrimination under the FEHA, but that workers' compensation provided the exclusive remedy because the injury for which work restrictions were imposed was job-related. Although the court did not so note in its Order, it also ruled from the bench that the LMRA preempted Jimeno's claim.

### II. STANDARD OF REVIEW

The court reviews a directed verdict granting judgment as a matter of law de novo. *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 816 (9th Cir.1992). The standard applied by the reviewing court is the same as that of the district court. *McGonigle v. Combs,* 968 F.2d 810, 816 (9th Cir.), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 399,

---

1. The policy, as stated in Mobil's brief before this court, is as follows: "if a bargaining unit employee at Mobil becomes permanently disabled such that he is unable to perform his job duties, that employee may not return to his job, but instead is entitled to short-term disability and rehabilitation benefits.... Any permanently disabled employee who has exhausted his benefits and is unable to obtain another bargaining unit job is administratively terminated and may seek long-term disability benefits."

121 L.Ed.2d 325 (1992). "[A] directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." *Id.* at 816.

## III. ANALYSIS

### A. FEHA PRIMA FACIE CASE

■ We first consider the threshold issue, raised by Mobil in its cross-appeal, whether the district court erred in finding that Jimeno established a prima facie case of physical handicap discrimination under the FEHA. Section 12940(a) prohibits discrimination in employment on the basis of physical disability, as well as other characteristics. Under the regulations interpreting the FEHA, "[p]hysical handicap discrimination is established by showing that an employment practice denies, in whole or in part, an employment benefit to an individual because he or she is a handicapped individual." Cal. Code Regs. tit. 2, § 7293.7. There are two elements of a prima facie case: (1) the complainant must satisfy one of the statutory definitions of "handicapped" individual and (2) the employer must have "discriminated on that basis." *Cassista v. Community Foods, Inc.*, 5 Cal.4th 1050, 22 Cal.Rptr.2d 287, 290 n. 4, 856 P.2d 1143 (1993).

The statutory definition of "handicapped individual" includes both those who actually "ha[ve] a physical handicap which substantially limits one or more major life activities" and those who are "regarded as having such a physical handicap." Cal.Code Regs. tit. 2, § 7293.6(i). "Major life activities" include normal functions such as speaking or working. Cal.Code Regs. tit. 2, § 7293.6(f). The interpretation of "substantially limits" is fact-specific. Inability to continue at the *particular* position for which the individual was responsible before the disability is ordinarily insufficient to constitute a "substantial limitation" under most state anti-discrimination statutes and the federal Rehabilitation Act.[2] *See, e.g., Miller v. AT & T Network Sys.*, 722 F.Supp. 633, 639 (D.Or.1989) (finding that a heat-sensitive individual was not handicapped

merely because he could not satisfy the temporary transfer requirements of a specific telephone installer job with AT & T, when he could perform ordinary telephone installer jobs without accommodation), *aff'd*, 915 F.2d 1404 (9th Cir.1990) (per curiam) (adopting the district court's opinion). "Primary attention is to be given to those life activities that affect employability, or otherwise present a barrier to employment or advancement." Cal.Code Regs. tit. 2, § 7293.6(f).

In order to satisfy the "regarded as having a handicap" prong, the claim asserted by Jimeno, the employee must (1) actually have "a physiological disease or disorder affecting one or more of the bodily systems" and (2) be "perceived by the employer" as having "a physiological disorder within the meaning of the FEHA, even if it is not in fact disabling." *Cassista*, 22 Cal.Rptr.2d at 297. The regulation, which specifies various fact situations under the "regarded as handicapped" prong, includes the following circumstances that are applicable to Jimeno's case:

> (3) "Does not have a physical handicap that substantially limits one or more major life activities but is treated by an employer ... as having ... a physical handicap that presently substantially limits major life activities.
>
> (4) Does not have a physical handicap that substantially limits one or more major life activities but *is treated by an employer* or other covered entity *as having an increased likelihood of developing a physical handicap* that substantially limits major life activities."

Cal.Code Regs. tit. 2, § 7293.6(h)(3)–(4) (emphases added).

■ Thus, in *Department of Fair Employment and Housing v. California State Univ. Sacramento*, FEHC Dec. No. 88–08 (Cal. F.E.H.C., May 20, 1988), the California Fair Employment and Housing Commission found that

> It is clear that complainant was 'physically handicapped' within the meaning of the Act. In removing complainant from his custodial position, respondent relied both

---

2. The California courts accept interpretation of the similar federal Rehabilitation Act (29 U.S.C. § 701 *et seq.*) terms as persuasive authority.

*County of Fresno v. Fair Employ. & Housing Comm'n*, 226 Cal.App.3d 1541, 277 Cal.Rptr. 557, 564 (1991), *review denied* (1991).

on the fact that he had had a lumbar laminectomy and on respondent's belief that *the condition of his back increased the chance of serious future impairment of his health and physical ability if he worked as a custodian without restrictions.* It is now well established that an employer's reliance on either of these grounds to disqualify an applicant constitutes discrimination because of physical handicap.

*Id.* at 17 (emphasis added); *see also Department of Fair Employment and Housing v. Harbor Tug and Barge Co.,* FEHC Dec. No. 92–02, 1992 WL 223888, at \*8–\*10 (Cal. F.E.H.C., Feb. 20, 1992) (finding no dispute regarding the employee's prima facie case, because the employee's degenerative spine disease requiring work restrictions was the basis for the employer's refusal to reinstate him to his former position); *Department of Fair Employment and Housing v. General Dynamics, Inc.,* FEHC Dec. No. 90–08, 1990 WL 312873, at \*6–\*7 (Cal.F.E.H.C., May 31, 1990) (finding the complainant physically handicapped within the FEHA because the employer relied on the existence of osteoarthritis in the ankle, and the fear that it would cause complainant problems in the future, as a basis for disqualifying the applicant). Therefore, an employer cannot terminate an employee merely because of a physical impairment that might endanger the employee's health sometime in the future if the employee continues with the type of work that he or she is currently doing. *Sterling Transit Co. v. Fair Employment Practice Comm'n,* 121 Cal.App.3d 791, 175 Cal.Rptr. 548, 549–50 (1981) (finding that the employer's refusal, because of the discovery of a back problem of congenital scoliosis, to hire an individual who had worked in the identical capacity for 19 months, violated the FEHA); *see also Ackerman v. Western Elec. Co.,* 860 F.2d 1514, 1518–19 (9th Cir.1988) (affirming that the California FEHA protects a woman who was discharged from her position as a telephone installer because of an asthma condition that restricted her ability to perform tasks that exposed her to dust, which could aggravate the condition); *Johnson v. Civil Serv. Comm'n,* 153 Cal.App.3d 585, 200 Cal. Rptr. 289, 292 (1984) (finding that the city discriminated on the basis of handicap when

it refused to hire an otherwise qualified person for the position of firefighter because of spondylolysis with spondylolisthesis, where the decision was based on "the potential risk that he might suffer a disability at some indefinite time in the future"); *cf. Thornhill v. Marsh,* 866 F.2d 1182, 1184 (9th Cir.1989) (finding an individual handicapped under the Rehabilitation Act because of a congenital deformity which the Corps perceived as imposing a disqualifying limitation on his ability to lift weight); *Mahoney v. Ortiz,* 645 F.Supp. 22, 24 (S.D.N.Y.1986) (finding that an individual's dislocated shoulder was a handicap because the employer "regard[ed] him as unfit for the job because of a potential for … 'nearly total incapacitation' ").

We conclude that Mobil's conduct towards Jimeno falls within the "regarded as" prong of the statutory definition. Jimeno was terminated because Mobil regarded him as having a disability, stemming from an actual physiological disorder, that precluded his working in any hourly position at Mobil because of the risk he faced of future handicapping injury. *See* Cal.Code Regs. tit. 2, § 7293.6(h)(4). Mobil's representatives stated that Mobil's decision to terminate Jimeno relied on the reports that he would be "at risk" if he continued in his current position. Jimeno undoubtedly has a spinal impairment (the spondylitic defect) which permanently limits his ability to lift weights above fifty pounds and thus affects his ability to find employment anywhere in his chosen profession. That is, because he has worked all of his adult life as a truck mechanic, and because those mechanics generally have to lift truck batteries and wheels which weigh more than the fifty pounds that Jimeno is allowed to lift alone, Mobil perceived Jimeno as being unable to perform his duties without accommodation. Mobil indicated that it regarded Jimeno's disability as limiting his current work potential when it arranged for vocational rehabilitation training in the entirely different career of computer-assisted design, and when it suggested that Jimeno was eligible for long-term disability benefits, which are available for a "complete inability to engage in any gainful occupation for which the employee is reasonably qualified by training,

education or experience." Mobil Long–Term Disability Plan. Mobil thus treated Jimeno as though his impairment "foreclosed generally" the possibility of employment as a truck mechanic, without accommodation, because of the risk he faced of future injury. *Miller,* 722 F.Supp. at 640. Therefore, Mobil regarded Jimeno as a disabled individual within the meaning of the FEHA.

> Second, discrimination is established if a causal connection exists between complainant's ... perceived physical handicap and an adverse action taken against [the complainant] by respondent. The evidence need not demonstrate that complainant's physical handicap was the sole or even the dominant cause of [complainant's] adverse treatment. Discrimination is established if the physical handicap was at least one of the factors that influenced respondent.

*Department of Fair Employment and Housing v. Gibson,* FEHC Dec. No. 94–06, 1994 WL 421316 (Cal.F.E.H.C., April 27, 1994) (citing *Watson v. Dept. of Rehabilitation,* 212 Cal.App.3d 1271, 261 Cal.Rptr. 204, 215 (1989), *review denied* (1989), and *Department of Fair Employment and Housing v. General Dynamics,* FEHC Dec. No. 90–08, 1990 WL 312873, at *8 (Cal.F.E.H.C., May 31, 1990)). Medical testimony confirmed Jimeno's spondylitic defect and the necessity of work restrictions to avoid risk of injury to his back. Mobil admittedly terminated Jimeno, in accord with its policy, because it concluded that Jimeno's back condition precluded any further employment as a Mobil mechanic. Mobil's workers' compensation defense also acknowledges that the work restrictions due to Jimeno's back condition prompted its decision to terminate him.

These facts are substantially similar to the situation in *Department of Fair Employment and Housing v. Harbor Tug and Barge Co.,* FEHC Dec. No. 92–02, 1992 WL 223888 (Cal.F.E.H.C., February 20, 1992). In that case, complainant had worked in the physically demanding position of tankerman for nine years when he began to have recurring lower back injuries. After complainant was diagnosed as having degenerative disc disease with herniation and nerve impingement which required work restrictions, the em-

ployer found him unfit for duty. *Id.* at *2–*7. The Fair Employment and Housing Commission found that the employer's actions satisfied the causation requirement of discrimination because "complainant's back condition was the sole reason he was not reinstated to his position as tankerman." *Id.* at *10. Thus, Mobil's decision to terminate Jimeno, based solely upon the condition of his back, is sufficient to establish the causal link that the FEHA requires for discrimination. Therefore, we affirm the district court's decision that Jimeno established a prima facie case pursuant to the FEHA.

### B. *LMRA PREEMPTION*

The district court found that section 301 of the LMRA preempts Jimeno's FEHA claim. Preemption is a matter of law that is reviewed de novo by the appellate court. *Galvez v. Kuhn,* 933 F.2d 773, 776 (9th Cir.1991). We conclude that the district court erred in finding that the LMRA preempts Jimeno's state-law claim for physical disability discrimination in employment.

Section 301(a) of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal law governs suits for breach of a collective bargaining agreement ("CBA") under the LMRA, which therefore preempts any state cause of action for breach of the CBA. *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983); *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 237 (9th Cir.1990). "Even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Miller v. AT & T Network Systems,* 850 F.2d 543, 545 (9th Cir.1988) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)). The LMRA does not, however, preempt the application of a state law remedy when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement." *Lingle v.*

*Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988).

Although Mobil argues that the evaluation of Jimeno's rights as an employee with a disability is inextricably intertwined with the terms of the labor contract, Jimeno counters that the FEHA establishes an independent, nonnegotiable state-law right. Thus, Mobil's preemption defense is viable only if Jimeno's FEHA claim cannot be resolved without interpreting the express and implied terms of the CBA.

We have previously concluded that the LMRA does not preempt other types of discrimination claims under the FEHA. *See Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748–49 (9th Cir.1993) (finding no preemption of a FEHA national origin discrimination claim); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir.1990) (finding no preemption of a FEHA religious discrimination claim); *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir.1989) (finding no preemption of a FEHA racial discrimination claim); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989) (finding no preemption of a FEHA age discrimination claim).

In addition, we have held that the LMRA does not preempt at least some state-law claims for physical disability discrimination. *Ackerman v. Western Elec. Co.*, 860 F.2d 1514 (9th Cir.1988) (finding no preemption of a FEHA disability discrimination claim); *see also Miller v. AT & T Network Sys.*, 850 F.2d 543 (9th Cir.1988) (finding no preemption of a disability discrimination claim pursuant to a similar Oregon statute).

Although *Miller* and *Ackerman* are relevant to Jimeno's claim, they are not necessarily dispositive of this case. In *Ackerman*, the preemption claim was based on a general "no discrimination" clause in the CBA and the possibility of seeking relief for violation of the clause through the grievance process. *Ackerman*, 860 F.2d at 1517. The court found the case to be on all fours with *Lingle* because the inquiry under the state statute did not depend on the meaning of any provision of the CBA: there was no need to interpret the "no discrimination" clause in

order to decide whether the employer had violated the state-guaranteed right against discrimination. *Id.* at 1517. Here, however, the CBA includes a specific physical fitness provision rather than a general "no discrimination" clause covering physical disability.

In *Miller*, the court assessed a similar claim for disability discrimination pursuant to an Oregon statute. AT & T fired an installer who refused to work temporary assignments in warm climates because heat affected his heart rate. The CBA at issue had various provisions governing work assignments, transfers, and discharges, as well as an exclusive grievance procedure concluding in binding arbitration. *Miller*, 850 F.2d at 545. To interpret the concept of a "nonnegotiable" and "independent" state-law right as required by the Court in *Allis–Chalmers*, 471 U.S. at 212–13, 105 S.Ct. at 1911–12, *Miller* developed the following analysis:

> [The] court must consider (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'

*Miller*, 850 F.2d at 548. The *Miller* court held that the state standard for evaluating whether an employee could satisfactorily perform the job required a factual inquiry independent of any interpretations of the CBA because the claim could be evaluated without considering the overlapping CBA provisions. *Id.* at 548–49.

Because *Miller* treats a factual situation that is similar to Jimeno's case, it is particularly persuasive on the question of LMRA preemption. Our analysis, however, must consider each prong of the *Miller* test.

1. *Does the CBA govern the actions giving rise to the state claim?*

■ Mobil's CBA with the Union does not satisfy the first prong of the *Miller* test. As

the Supreme Court recently noted in *Livadas v. Bradshaw,* —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994), "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Id.* at ——, 114 S.Ct. at 2078 (quoting *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912, and *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883). Jimeno's prima facie case can be evaluated without construing the CBA. Although Article XIV of the CBA governs physical disability determinations for Mobil employees (by establishing physical fitness examinations as a condition of employment, requiring certification of physical fitness after periods of disability, providing a procedure for independent medical assessment of an employee's fitness, and permitting grievance and binding arbitration to settle disputes about the fitness determination process), the agreement is silent regarding possible management responses when an employee is determined to be unfit to continue in a position without work restrictions.

■ Mobil's potential defenses are also relevant to the preemption analysis. *See Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882 (concluding that both the prima facie elements of the retaliatory discharge claim and the potential defenses involve "purely factual questions" that do not require the court to interpret the CBA). Here, Mobil asserts a statutory affirmative defense, which requires that the employer "demonstrate that after reasonable accommodation . . . the employee cannot perform the essential job functions of the position in question in a manner which would not endanger his or her health or safety because the job imposes an imminent and substantial degree of risk to the . . . employee." Cal.Code Regs. tit. 2, § 7293.8(c). The CBA here does not contain provisions governing this defense. Thus, Jimeno's case is unlike the situation discussed in *Perugini v. Safeway Stores, Inc.,* 935 F.2d 1083 (9th Cir.1991). There, the court held that § 301 of the LMRA preempt-

ed an employee's emotional distress claim, to the extent that the claim was based on the employer's refusal to provide light duty, because the CBA specifically provided for employment of workers with disabilities in suitable positions upon mutual agreement between the Union and employer. *Id.* at 1087–89.

■ The crucial inquiry is whether the CBA must serve as the measuring rod in determining whether Mobil acted reasonably in its blanket policy of refusing to make any adjustments to employee workload or work environment in order to accommodate those with work restrictions. *See Moreau v. San Diego Transit Corp.,* 210 Cal.App.3d 614, 258 Cal.Rptr. 647, 650–55 (1989) (finding that the LMRA preempted an employee's claims for emotional distress and wrongful discharge based on employer entrapment because it was necessary to interpret the contract to determine the *reasonableness* of the entrapment), *review denied* (1989). Although it is "within the power of the parties to determine what would constitute 'reasonable' performance of their [contractual] obligations," *Allis–Chalmers,* 471 U.S. at 216, 105 S.Ct. at 1913–14, no reasonableness inquiry is needed when the CBA, as in this case, is silent regarding the ways that management may either restructure positions to modify workload or design special arrangements, possibly with mutual agreement from the Union, to accommodate employees who are capable of working with minimal restrictions.

■ Thus, while we acknowledge that employers and unions in a business such as Mobil's may establish as part of the CBA reasonable procedures for the routine assessment of employees' physical fitness to continue to perform their current jobs safely and efficiently, we hold that the CBA in this case falls short of establishing a comprehensive framework for challenging those determinations, for job modification, or for the transfer or termination of "unfit" employees. There is no general provision prohibiting discrimination based on physical disability, nor does the agreement discuss reasonable accommodation.[3] *See Martin Marietta Corp., Aero &*

---

**3.** We note that our role in examining the CBA to

determine whether an interpretation of the CBA

*Naval Systems v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1400–02 (4th Cir.1994) (finding that the LMRA does not preempt a state-law disability discrimination claim in the absence of CBA provisions providing for reasonable accommodation and reinstatement after disability, in the context of a permissive arbitration clause encompassing grievances involving interpretation or application of the CBA).[4] A discrimination claim "need not be preempted merely because certain aspects of the collective bargaining agreement govern work assignments and discharges." *Miller*, 850 F.2d at 548.

▇ Mobil claims that its acknowledged practice of administratively terminating employees who are physically unfit to continue their jobs and who have not been able to find a new position in the company through the bidding process is an implied term of the CBA, under *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1351–52, 4 L.Ed.2d 1409 (1960) (suggesting that the labor contract includes both express and implied terms, such as established practices and policies adopted pursuant to the agreement). Although there is no written policy, Mobil points to evidence suggesting Union acquiescence in the practice which Mobil has followed for more than a decade.

We are not persuaded that this unilaterally adopted managerial policy constitutes an implied term of the contract. Union acceptance of such a policy would constitute a waiver of its members' rights under state law. As the *Lingle* Court noted, "we would require 'clear and unmistakable' evidence in order to conclude that such a waiver had been intended." *Lingle*, 486 U.S. at 409 n. 9, 108 S.Ct. at 1883 n. 9. In this matter, however, there is no evidence of any such waiver. Uncontroverted testimony at trial established that Mobil's unwritten policy had never been the subject of negotiation between Mobil and the Union. The Union grieved the practice and the application of the policy in Jimeno's case, and Union officials met with management to seek Jimeno's reinstatement. The Union withdrew the grievance because it had limited resources and because there was no explicit protection under the CBA for employees with disabilities. Also, the fact that Mobil did not rigidly adhere to its policy indicates that it was not a binding part of the contract and that there may have been reasonable means of accommodation available. Evidence at trial established that Mobil developed an appropriate management policy to accommodate temporary work restrictions in March 1991 and changed its policy regarding accommodation of work restrictions in July 1992, the effective date of the Americans with Disabilities Act. Similarly, uncontroverted testimony established that Mobil could accommodate disabilities: through mutual agreement between the Union, the company, and the employee involved, it had previously done so for at least one other hourly employee who had work restrictions. In addition, evidence at trial established that contract mechanics in the same garage performed the same work as the Mobil mechanics, but with work restrictions imposed by their contracting company limiting weight lifting, as is required for Jimeno. Therefore, we conclude that Mobil's policy is not an implied term of the CBA representing a negotiated resolution that determines what constitutes reasonable accommodation.

▇ Mobil also asserts that the CBA *requires* resolution of physical fitness disputes through the grievance mechanism, thus man-

is necessary to the resolution of the state-law claim is not the same as the role of a labor arbiter who interprets the CBA in the course of a labor dispute. *See Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. We may categorize the provisions that are included and determine what areas have been left out of the agreement in deciding whether federal labor law or state anti-discrimination law governs the claim. *See, e.g., Livadas*, —— U.S. at ——, 114 S.Ct. at 2078 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement is to be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

4. We note, without implying endorsement of the holding, that the Sixth Circuit ruled that there was no LMRA preemption even when the CBA in question included provisions governing accommodation and reinstatement after a disability. *See Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir.) (en banc), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989).

dating preemption under *Evans v. Southern Pac. Transp. Co.*, 213 Cal.App.3d 1378, 262 Cal.Rptr. 416 (1989) (finding Railway Labor Act preemption when the CBA requires resolution of physical fitness questions through an exclusive grievance and arbitration process), *review denied* (1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990). Unlike the language in at least one other section of the CBA, however, the language of the physical fitness grievance provision is permissive.[5] It does not require resolution of physical fitness questions through the exclusive grievance procedure. In a similar case, the Third Circuit considered the permissive nature of the arbitration clause in concluding that the LMRA did not preempt a state law physical disability discrimination claim. *Martin Marietta,* 38 F.3d at 1401–02. *Evans* is also distinguishable because it deals with a claim under the Railway Labor Act, which was thought, at the time, to "provide[ ] a stronger case for preemption than the NLRA." *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1371 n. 6 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985); *see also Croston v. Burlington & Northern R.R.,* 999 F.2d 381, 388 n. 3 (9th Cir.1993). *But see Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2249, 129 L.Ed.2d 203 (1994) (changing RLA preemption analysis by holding that the *Lingle* LMRA preemption standard "provides an appropriate framework for addressing pre-emption under the RLA"). In addition, dispute resolution pursuant to the CBA would not resolve the same issues that Jimeno's state-law physical disability discrimination claim addresses. Because Mobil's CBA with the Union does not determine Mobil's conduct in response to a finding that an employee is unfit nor provide a contractual standard for reasonable accommodation of employees who are physically unfit to continue their current jobs, neither the FEHA prima facie claim nor the statutory

defense of "no reasonable accommodation without undue hardship" is inextricably intertwined with the CBA.

2. *Has the State Articulated a Sufficiently Clear Standard that the State Claim Can Be Evaluated without Considering the Overlapping Provisions of the CBA?*

Moreover, even if we were to conclude that the CBA governs the actions giving rise to Jimeno's suit (the first *Miller* question), to be successful Mobil must demonstrate[6] that the state right is not based on a sufficiently clear standard (the second *Miller* question), so that the discrimination claim is so intertwined with the operation of the CBA that it cannot be assessed without consideration of the CBA's overlapping provisions. *See Miller,* 850 F.2d at 548. We conclude that Mobil cannot satisfy this prong of the *Miller* test.

Jimeno does not claim that Mobil breached its contractual agreement with him in the way that the company administered the provisions of the CBA regarding evaluation of physical fitness or availability of the grievance process as a dispute resolution mechanism: such a claim would clearly fall under the LMRA and preempt any state-based remedy. *See Allis–Chalmers,* 471 U.S. at 218 & n. 12, 105 S.Ct. at 1914 & n. 12 (holding that in employee's suit for breach of the duty of good faith and fair dealing, it was necessary to interpret the parties' agreement regarding the manner in which claims would be handled to determine whether management had departed substantially from the standard manner of processing such claims under the CBA). Instead, Jimeno challenges what he contends is Mobil's unilateral managerial policy of ignoring state-law requirements to accommodate disabled employees through reasonable means that do not im-

---

5. The agreement states, in relevant part:
 If, after the opinion of such doctor has been received by the Company, the employee believes he has just cause for complaint, such complaint *may* be properly submitted as a grievance under the provisions of Article XVII of these Articles of Agreement. Article XIV, ¶ 128 (emphasis added).

6. Mobil bears the burden of proof on its preemption defense. *See United States v. Skinna,* 931 F.2d 530, 533 (9th Cir.1990) (stating that the burden of proof is on the party asserting a preemption defense).

pose undue hardship on the enterprise.[7] Jimeno claims that he has not forfeited his state-law right merely by participating in an agreement with an arbitration clause. *See Livadas*, — U.S. at ——, 114 S.Ct. at 2082. His state-law claim does not "sidestep available grievance procedures," *Lingle*, 486 U.S. at 411, 108 S.Ct. at 1884 (quoting *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1915–16); rather, its "only source" is an independently adjudicable employment right, *see Hawaiian Airlines, Inc. v. Norris*, — U.S. at ——, 114 S.Ct. at 2246 (finding that a whistleblower claim is not preempted by the Railway Labor Act when the "only source" of the right asserted is state law).

First, Jimeno's prima facie FEHA claim can be evaluated without reference to the CBA, *see supra*, even though the factual inquiry deals with the same underlying factual situation that is governed by Article XIV's fitness examination provisions.

Second, clear statutory and regulatory standards provide a means to determine "reasonable accommodation" without reference to the CBA. The FEHA regulations provide three categories to be considered in assessing the employer's efforts to accommodate disabled employees: accessibility, job restructuring, and alteration of premises. Cal.Code Regs. tit. 2, § 7293.9(a)(1)–(3). Job restructuring may also entail reassignment, transfer, modified work schedules and acquisition of equipment to assist disabled employees. *Id.* § 7283.9(a)(2). Although the bidding process established by the CBA limits the ability of management to transfer Jimeno to a position governed by the bidding process, *see Davis v. United States Postal Serv.*, 675 F.Supp. 225 (M.D.Pa.1987) (holding that in the context of the Rehabilitation Act, reasonable accommodation does not mean that an employer is required to transfer a disabled employee in violation of a CBA's seniority provision), such a transfer is merely one of various options that would satisfy Mobil's duty to accommodate. Evidence established that Mobil makes no effort to ensure that workers who have been placed on

disability status are informed about bidding possibilities, even though this minimal effort to facilitate transfer would not conflict in any way with the CBA. In addition, Mobil offered no evidence at trial that it considered Jimeno's interest in supervisory positions, which are not covered by the bidding process. As already discussed, Mobil refused as a matter of company policy to consider any of the other job restructuring options outlined in the state regulation, which we "interpret[ ] flexibly" to encourage employers to "remov[e] obstacles" for employees with disabilities. *Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956, 961 (N.D.Cal.1994). As in *Sargent*, we note that "[t]he real flaw in defendants' assertion that no reasonable accommodation was possible … is that they apparently terminated [the plaintiff] without exploring any other options with [the plaintiff] in a meaningful way." *Id.* at 962.

Third, the regulations also specify factors to be considered in assessing the hardship on the employer. These include facility size, number of employees, composition of workforce, budget, type of operation, and cost of accommodation. Cal.Code Regs. tit. 2 § 7293.9(b). Again, the CBA is only peripherally relevant to this evaluation and, as such, does not mandate preemption. *See Lingle*, 486 U.S. at 413, n. 12, 108 S.Ct. at 1885, n. 12; *Martin Marietta*, 38 F.3d at 1401 (holding that even though the CBA involves provisions defining when an employee is "qualified to work," claim "involves no real issue of interpretation of the CBA" or at most some "tangential[ ]" interpretation, which would be governed by federal law). Accordingly, since the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the provisions of the CBA, the answer to the second *Miller* question must be "yes."

3. *Has the State Shown an Intent Not to Allow Its Prohibitions to be Altered or Removed by Private Contract?*

 The third prong of the *Miller* test, requiring an analysis of whether the state

---

7. Jimeno has not asserted a claim under the Americans with Disabilities Act of 1990, Pub.L. No. 101–336 (codified as amended in relevant

part at 42 U.S.C. § 12101 *et seq.*), nor has he suggested that it should apply retroactively to his case.

has shown an intent not to allow its prohibition to be altered or removed by private contract, also mandates a finding of no preemption in this matter. Not only does the FEHA explicitly establish the right to employment without discrimination based on physical handicap as a public policy of the state, Cal.Gov't Code, § 12920 (Deering, 1982 & Supp.1994), but in the context of a whistleblower discharge, we have held that there is no preemption when "the tort of wrongful discharge in violation of public policy exists independent [sic] of any contractual right." *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). Thus, the California FEHA is unlike the Missouri anti-discrimination provision which requires consideration of the employer's authority under the CBA to make accommodations. *See Davis v. Johnson Controls, Inc.*, 21 F.3d 866, 868 (8th Cir.), *cert. denied*, ─ U.S. ─, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). Therefore, Mobil cannot assert that the state is indifferent to negotiation and alteration of the right by private contract, and the answer to the third *Miller* question must be "yes."

We conclude that resolution of Jimeno's FEHA claim requires a "purely factual inquiry." *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. We need not consult the CBA to determine whether Mobil's decision to terminate Jimeno because of his physical condition constitutes a prima facie claim under the FEHA nor whether Mobil's refusal to consider minor modifications to Jimeno's work requirements in these circumstances is reasonable. Therefore, we reverse the district court's ruling that the LMRA preempts Jimeno's FEHA claim.

## C. *WORKERS' COMPENSATION EXCLUSIVITY*

■ Mobil also contends that California's workers' compensation laws, Cal.Labor Code §§ 132a and 3600–3602, are the exclusive remedy for Jimeno's discrimination claim because a work-related injury to his back caused the work restrictions which led to his termination. Jimeno counters that the 1992 amendments to the FEHA, 1992 Cal.Stat. ch.

912 § 5 (AB 1286) and ch. 913 § 23 (AB 1077), eliminate the exclusive remedy provisions of the workers' compensation laws. Further, he claims that workers' compensation provisions are inapplicable to his claim because Mobil terminated him because of the spondylolysis, a non-work-related developmental defect, and not because of his degenerative disc condition, a back problem which may be aggravated by heavy work.

1. *Legal Basis of Workers' Compensation Exclusivity*

a. *Relevance of the* Judson *and* Shoemaker *Decisions*

Because the workers' compensation provisions were enacted prior to the FEHA to provide a specific remedy for employer discrimination based on work-related injuries, the California Supreme Court, prior to the 1992 amendments to the FEHA, interpreted Labor Code § 132a broadly as the exclusive remedy for any type of employer discrimination against workers because of injuries occurring in the course of and arising out of their employment. *Judson Steel Corp. v. Workers' Compensation Appeals Bd.*, 22 Cal.3d 658, 150 Cal.Rptr. 250, 586 P.2d 564 (1978); *accord, Palmer v. Roadway Express, Inc.*, 664 F.Supp. 458 (N.D.Cal.1987); *see* Labor Code §§ 3600–3602 and § 132a. Several California appellate courts held specifically that the workers' compensation laws preclude a cause of action based on the physical disability provisions of the FEHA. *See, e.g., Denney v. Universal City Studios, Inc.*, 10 Cal.App.4th 1226, 13 Cal.Rptr.2d 170 (1992); *Fortner v. Safeway Stores, Inc.*, 229 Cal.App.3d 542, 280 Cal.Rptr. 409 (1991), *review denied* (1991); *Pickrel v. General Telephone Co.*, 205 Cal.App.3d 1058, 252 Cal. Rptr. 878 (1988), *review denied* (1989).

We cannot, however, decide whether workers' compensation provides the exclusive remedy for discrimination based on work-related injury without considering the California Supreme Court's decision in *Shoemaker v. Myers*, 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990), and its progeny. Elaborating on its opinion in *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 233 Cal.Rptr. 308, 729 P.2d 743 (1987), the court

exempted employer conduct that does "not stem[ ] from a risk reasonably encompassed within the compensation bargain" from the workers' compensation exclusive remedy provisions. *Shoemaker*, 276 Cal.Rptr. at 313, 801 P.2d at 1064. The court has since applied the *Shoemaker* test to find that several types of conduct may fall within the exception to workers' compensation exclusivity. *See, e.g., Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) (holding that a claim of false imprisonment by an employer is always outside the scope of the compensation bargain); *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992) (holding that a claim for retaliatory dismissal for supporting a co-worker's claim of sexual harassment is not precluded by workers' compensation remedies); *Livitsanos v. Superior Court*, 2 Cal.4th 744, 7 Cal.Rptr.2d 808, 816, 828 P.2d 1195, 1203 (1992) (suggesting that an employee's emotional distress injury may fall outside the exclusivity provisions).

The California appellate courts, in cases decided *after* the *Shoemaker* decision, have specifically held that the workers' compensation provisions preclude a cause of action pursuant to the physical disability provisions of the FEHA. *See, e.g., Langridge v. Oakland Unified School District*, 25 Cal.App.4th 664, 31 Cal.Rptr.2d 34, 36 (1994) (finding that "discrimination based on a work-related physical disability is a risk included in the compensation bargain"); *Angell v. Peterson Tractor, Inc.*, 21 Cal.App.4th 981, 26 Cal.

Rptr.2d 541 (1994) (finding that workers' compensation provides the exclusive remedy for an employee with a work-related heart condition who was discharged wrongfully), *review denied* (1994); *Usher v. American Airlines, Inc.*, 20 Cal.App.4th 1520, 25 Cal. Rptr.2d 335 (1993) (finding that workers' compensation provides the exclusive remedy for an employee claiming constructive termination because of a work-related injury), *review denied* (1994). These courts grounded their interpretation on the specificity of the workers' compensation provisions and the decision by the legislature to "place[ ] work-related disability discrimination within the scope of the workers' compensation laws." *Langridge*, 31 Cal.Rptr.2d at 36.[8] These recent appellate court decisions are persuasive.

b. *Application of the 1992 FEHA Amendments*

■ Jimeno also contends that the 1992 amendments to the FEHA, which became effective for cases pending before the Fair Employment and Housing Commission on or after January 1, 1993, *see, e.g.,* Stats. ch. 913 § 44, 1992 Cal.Adv.Legis.Serv. 3837, 3885 (Deering), eliminate any possibility of workers' compensation exclusivity. Jimeno argues, in effect, that the Legislature's strengthening of the FEHA to incorporate provisions of the American with Disabilities Act of 1990, Pub.L. No. 101–336 (codified as amended in relevant part at 42 U.S.C. § 12101 *et seq.*), whenever those provisions provide more protection, and the omission of

---

**8.** Jimeno inappropriately cites *Hartman v. Mathis & Bolinger Furniture Co.*, 282 Cal.Rptr. 35 (Ct.App.1991) (finding that physical disability discrimination claims under the FEHA are not precluded by the workers' compensation exclusivity provisions), *review granted and opinion superseded*, 285 Cal.Rptr. 230, 815 P.2d 303 (1993), *review dismissed and opinion remanded without ordering publication*, 17 Cal.Rptr.2d 827, 847 P.2d 1043 (1993), *denied publication by order of the California Supreme Court* (June 2, 1993). Under California's court rules, opinions superseded by dismissal of review and remand are not published without express order of the California Supreme Court, and unpublished opinions may not be cited as authority. California Rules of Court 976(d) and 977(a); *see also Morgan Hill Unified Sch. Dist. v. Amoroso*, 204 Cal.App.3d 1083, 252 Cal.Rptr. 1, 1–2 (Ct.App.1988) (noting that California Supreme Court remand after a

grant of review without ordering publication renders prior opinion no longer published).

We note that the California Fair Employment and Housing Commission's decisions are also unpersuasive on this issue. After *Shoemaker*, the Commission reaffirmed an earlier ruling that workers' compensation claims do not preclude FEHA claims of discrimination based on work-related physical disabilities. *Department of Fair Employment & Housing v. American Airlines*, FEHC Dec. No. 91–06, 1991 WL 370086 at *14–15 (Cal.F.E.H.C., March 7, 1991). We do not find the Commission's application of the *Shoemaker* exception to work-related physical disabilities persuasive, however, because it has chosen to ignore applicable California court precedent in determining the mandate for its own enforcement activities. *See id.* at *17. Thus, the precedential weight of the Commission's decision is limited.

any language explicitly exempting workers with work-related disabilities should be interpreted to mean that the FEHA precludes exclusive application of the workers' compensation provisions.

Jimeno cites the Legislative Counsel's Digest for the bill before the California legislature, which indicates that "[t]he bill would specify that the act's provisions are not superseded by provisions of other laws relating to workers' compensation and insurance." *See* Stats. ch. 913, Legislative Counsel's Digest (15), 1992 Cal.Adv.Legis.Serv. 3837, 3850 (Deering) (discussing Assembly Bill 1077). This comment accompanied a proposed new section 12994,[9] which would have eliminated workers' compensation exclusivity, but that provision was never enacted into law because the Senate deleted it in the Senate's June 1, 1992 version of the bill. As a result, the amendments as enacted did *not* include any new language providing that the FEHA should supersede workers' compensation exclusivity. *See* Assembly Bill 1077, 1991–92 Legis., Reg.Sess. (as amended in the Senate, June 1, 1992).

When, as here, the state high court has not addressed the explicit question at issue, the role of the panel is to determine how that court would rule. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1093 (9th Cir.1990). Although the panel may look for guidance to decisions by intermediate appellate courts, those decisions are not binding if the panel is convinced that the state's supreme court would rule differently. *Martinez v. Asarco, Inc.*, 918 F.2d 1467, 1473 (9th Cir.1990) (disregarding two Arizona appellate decisions).

■ California courts give substantial weight to the deletion of a provision during the drafting stage. "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omit-

ted provision." *Rich v. State Board of Optometry*, 235 Cal.App.2d 591, 45 Cal.Rptr. 512, 522 (1965); *accord, People v. Gangemi*, 13 Cal.App.4th 1790, 17 Cal.Rptr.2d 462, 466–67 (1993).

The Legislature, in enacting the broad, anti-discriminatory provisions of the FEHA, was aware of the more specific workers' compensation provisions and could have included explicit statements exempting FEHA claims from the exclusivity provisions. Instead, the Legislature declined to enact such a provision as part of the 1992 amendments. Therefore, we hold that the deletion of the provision explicitly eliminating workers' compensation exclusivity makes impossible what was already dubious—the plaintiff's contention that the amendments that were adopted in 1992 had any effect on such exclusivity. Because we find that the 1992 amendments do not eliminate the exclusivity of the workers' compensation remedy, we need not address Jimeno's arguments for retroactive application of the amendments to this case.

Therefore, we find that the California workers' compensation provisions provide the exclusive remedy under California law for a work-related physical disability discrimination claim. We must now consider whether Mobil has met its burden to show that a work-related injury was the cause of its decision to terminate Jimeno, thus invoking the exclusive workers' compensation remedies.

### 2. *Sufficiency of the Evidence*

### a. *Compensable Injury*

■ The California workers' compensation provisions require that a compensable injury must "aris[e] out of and in the course of employment." Cal.Labor Code § 3600. In *Maher v. Workers' Comp. Appeals Bd.*, 33 Cal.3d 729, 190 Cal.Rptr. 904, 661 P.2d 1058 (1983) (en banc), the California high court established that an employee's injury meets

9. The new section read as follows:

It is the intent of the Legislature that none of the provisions of this part relating to discrimination in employment because of physical disability, mental disability, or medical conditions shall in any manner be limited or superseded by any of the provisions of Section 132a of the Labor Code Division 4 (commencing with Sec-

tion 3201) of the Labor Code, Division 4.5 (commencing with Section 6100) of the Labor Code, or Division 4.7 (commencing with Section 6200) of the Labor Code.

Assembly Bill 1077 § 12994, 1991–92 Legis., Reg.Sess. (as amended in the Assembly, January 16, 1992).

the second prong of the test, "in the course of employment," when the injury occurs because the employee "does those reasonable things which his contract with his employment expressly or impliedly permits him to do." *Id.,* 190 Cal.Rptr. at 906, 661 P.2d at 1060. The parties do not dispute the applicability of this prong of the test, even though Jimeno first experienced the back pain at home over the weekend.

An injury meets the first prong of the definition, "arising out of" the employment, if it "occur[s] by reason of a condition or incident of [the] employment" such that "the employment and the injury ... [are] linked in some causal fashion." *Id.* (citations omitted). Although the statute explicitly applies only if "the injury is proximately caused by the employment," Cal.Labor Code § 3600(c), the *Maher* court noted that this requires only "that the employment be one of the contributing causes without which the injury would not have occurred." *Maher,* 190 Cal.Rptr. at 906 n. 3, 661 P.2d at 1060 n. 3 (interpreting the statute liberally to permit employee to recover for injuries from employer-mandated treatment of a preexisting illness). The statutory "medical eligibility" requirement for designation as a "qualified injured worker" supports this definition of proximate cause by requiring that "[t]he employee's expected permanent disability as a result of the injury, *whether or not combined with the effects of a prior injury or disability, if any,* [must] permanently preclude[ ] ... the employee from engaging in his or her usual occupation." Cal.Labor Code § 4635 (emphasis added). Thus, one California court explicitly held that "an employee is entitled to such benefits for a preexisting injury or disability, whether industrially caused or not, when a later injury on the job aggravates that condition." *Fortner v. Safeway Stores, Inc.,* 280 Cal.Rptr. at 412 (finding that workers' compensation provisions barred other remedies for an employee's "painful feet" condition which had been aggravated by the employer's requirement that she wear closed-toe shoes at work).

### b. *The Evidence at Trial*

Under de novo review of a directed verdict, this court views the evidence in the light most favorable to appellant in deciding whether there was no credible formulation of the evidence to support Jimeno's claim that the disability for which he was terminated did not arise out of his employment. *See In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 816 (9th Cir.1992).

### (1) *Jimeno's evidence of non-work-related impairment*

Jimeno claims that the lower back pain he experienced at least once in 1983 and once in 1990, possibly caused by heavy work exacerbating his acknowledged degenerative disc condition, did not make him unfit to work. Instead, he claims that undisputed evidence presented at trial established that Mobil terminated him because of work restrictions, that work restrictions were necessary solely as prophylactic protection for Jimeno's non-work-related spondylitic bone defect rather than for work-related cumulative injuries that may have aggravated Jimeno's mildly calcified disc condition, and that Mobil had been informed of the developmental defect and knowingly terminated Jimeno because of that defect.

First, Jimeno provided evidence that at least some other workers with arguably more serious disc conditions were not given equivalent work restrictions. Jimeno's expert witness, Dr. London, testified that degenerative disc disease occurs in many individuals and may be exacerbated by heavy work but would not usually require work restrictions. London compared Jimeno's conditions to medical information provided on two other workers who continued to work at Mobil without work restrictions in spite of similar *or more serious* degenerative disc disease, but who had no spondylitic defects.

Second, Jimeno produced evidence to support his claims that the work restrictions were related *only* to the developmental defect and that Mobil knew that it was the defect, not the degenerative disc disease, that required permanent work restrictions. London testified that the work restrictions imposed on Jimeno were necessary solely as a prophylactic safeguard because of the spondylitic defect. Jimeno demonstrated that

Mobil knew at the time of the May 1990 decision to place Jimeno on medical leave because of work restrictions that Jimeno had *both* a degenerative condition that might be aggravated by heavy work and a non-work-related impairment that had *not* been aggravated in any way by the employment up to that time. The degenerative disc disease was originally noted as a possible source of work-related pain in Dr. Dallas' March 1990 report.[10] Dr. Dallas included information about the spondylitic defect for the first time in his April 1990 report on the results of the CT scan. Dallas impliedly linked the spondylitic defect to the work restrictions by virtue of his May 23, 1990 report that "[c]onsideration for a job analysis on this patient may be given as the patient's CT scan was abnormal and I feel that he may be at risk performing heavy work on a regular basis with associated repetitive bending, lifting, and stooping activities." Mobil conceded that it was this report that led Dr. Wald, the head of Mobil's medical clinic, to place Jimeno on medical leave. Dr. Van Pelt's first review of Jimeno's condition on May 14, 1991 confirmed the existence of a spondylitic defect without any slippage.[11] Van Pelt also suggested that the degenerative arthritic condition could be the source of Jimeno's lower back pain. More significantly, Dr. Van Pelt's second review on June 11, 1991, after receiving the job analysis, indicated that "[m]y only reservation would be the fact that he has the spondylitic defect in his lower back and the repetitive lifting of heavy objects as listed in the job analysis could be detrimental." This evidence would support a reasonable jury's conclusion that Mobil terminated Jimeno *solely* because it was concerned that Jimeno's heavy work on the job could potentially cause a slippage of the developmental spondylitic defect and *not* because it had concluded that the cumulative

work-related exacerbation of his degenerative disc condition rendered him unfit to continue working. If that were the jury's conclusion, Mobil would not satisfy the contributory cause requirement for workers' compensation preemption.

*(2) Mobil's evidence of compensable injury.*

Mobil argues that Jimeno's termination resulted from injuries to his back from the cumulative effects of strenuous labor at the refinery and not from the spondylitic defect. Mobil describes the defect as a "secret handicap" that "Dr. London found" but that "nobody else had focused on as an independent isolated disabling condition." Mobil claims that it consistently regarded Jimeno as having a work-related disability, not a physical disability unconnected with his employment. In addition, Mobil claims that Jimeno's workers' compensation claims and testimony at trial that he did not consider himself disabled constitute admissions of work-related injury that are not consistent with the FEHA claim.

We conclude that Mobil's evidence is not so overwhelming as to require judgment as a matter of law on this issue in Mobil's favor. First, the medical records of Drs. Quinio, Wald, Dallas, and Van Pelt were admitted solely for the purpose of establishing the information available to Mobil and not to establish the truth of their contents. Thus, Dr. London's expert testimony regarding the two impairments and the causal relationship between the spondylitic defect and the work restrictions is especially significant. Yet the district judge relied explicitly on the contents of the medical reports in concluding that the injury for which Jimeno was terminated was a compensable one.

Second, Jimeno's admission at trial that he did not consider himself handicapped

---

10. At the time of the original absence, there was no consensus that the lower back pain resulted from a work-related injury. For example, Dr. Dallas' March 26, 1990 report indicated that he was "not at all certain if this patient's current symptoms are work-related. It is possible that his symptoms may be work-related, however, consistent with possible work-related aggravation of a pre-existing severe degenerative condition." In addition, Mobil's April 18, 1990 absence report, completed the day after Jimeno

returned to work, indicates "personal sickness" that was "non-occupational."

11. The technical term for slippage of the separate bony parts is "spondylolisthesis," a more serious condition. Doctors evaluating Jimeno uniformly reported that no slippage had occurred, thus there had been no work-related damage to the spondylitic defect.

is ambiguous. The layperson's sense of "handicap" is different from the legal definition under particular statutes. Jimeno's testimony can be understood to mean that, although he knows that he has a spinal defect, he also knows that he can maintain basic life activities without restrictions other than a minimal accommodation of workload to limit heavy weightlifting. This is consistent with Jimeno's claim pursuant to the "regarded as" prong of the FEHA definition of "handicapped." *See supra* Section II. It may also mean that Jimeno believes that the degenerative disc condition is not permanently disabling even though it may cause him to suffer lower back pain at times. His statement is thus not dispositive of the issue.

■ Similarly, Jimeno's simultaneous petition under Cal.Labor Code § 132a claiming discrimination does not conflict necessarily with his FEHA claim. First, a reasonable jury could consider both the workers' compensation and the FEHA claims to be realistic, separate, and independent claims dealing with different factual aspects of a complex situation. According to this first alternative, Jimeno's different back conditions resulted in unrelated management responses that were discriminatory: initially, Mobil required him to take medical leave for the degenerative arthritic condition that was aggravated by work when other similarly situated individuals were allowed to continue working, providing the basis for a workers' compensation claim; and later, Mobil terminated Jimeno to protect itself from potential future claims of injury after learning that the developmental defect required work restrictions. Alternatively, a reasonable jury could accept the pending workers' compensation claim and petition as an alternative legal hypothesis in the event that the FEHA claim fails, whereby Jimeno asserts for the workers' compensation claim that Mobil unreasonably terminated him because of work restrictions that it considered necessary to prevent further exacerbation of his degenerative disc disease. Because Jimeno could not be certain what caused Mobil's actions, it was necessary for

him to preserve his option to pursue the workers' compensation claim.

Mobil inappropriately relies on *Fortner,* 280 Cal.Rptr. 409. In that case, it was uncontroverted that work conditions had exacerbated a pre-existing problem and that work-related pain made the plaintiff unable to work. Both the plaintiff and "every physician who examined plaintiff acknowledged that plaintiff's pain was increased by the Safeway requirement that she wear closed-toe shoes." *Fortner,* 280 Cal.Rptr. at 412 n. 2. Here, however, a reasonable jury could conclude, considering the evidence in the light most favorable to Jimeno, that the injury for which Jimeno was terminated was not work-related in any way. Because a directed verdict on this issue is inappropriate, we vacate the district court's decision on this issue and remand for further proceedings in accord with this decision.

### D. *MOBIL'S STATUTORY DEFENSES UNDER THE FEHA*

■ Jimeno claims that the district court erred in not granting its motion to alter judgment to find liability as a matter of law because Mobil did not meet its burden of production on its affirmative defenses under the FEHA. Mobil claims to have established two alternative defenses pursuant to the FEHA: (1) that state or federal law required Mobil to act as it did in this case (the "required by law" defense) and (2) that allowing Jimeno to continue working would have posed a danger to Jimeno because he would have been unable to perform his essential job functions, after reasonable accommodation, without an imminent and substantial degree of risk (the "danger to self/no reasonable accommodation" defense). Cal.Code Regs. tit. 2, § 7293.8(a), (c).[12]

Mobil claims that the Workers' Compensation Act *required* it to handle Jimeno's condition as it did. This "required by law" defense thus duplicates the workers' compensation exclusivity defense and will not be considered further here.

12. The "required by law" defense is incorporated in § 7293.8 by reference to the defenses allowed

for non-physical-handicap claims under § 7286.7(f).

We have interpreted the "danger to self/no reasonable accommodation" defense to have a "narrow scope" that requires the employer to "offer more than mere conclusions." *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1519 (9th Cir.1988). The defense requires that the employee face an "imminent and substantial degree of risk" in performing the essential functions of the job. *Department of Fair Employment and Housing v. General Dynamics, Inc.*, FEHC Dec. No. 90–08, 1990 WL 312873, *7 (Cal.F.E.H.C., May 31, 1990). Termination to protect an employee from harm that is merely potential is not included:

> [I]t is no defense to assert that a handicapped individual has a condition or a disease with a *future risk*, so long as the condition or disease does not presently interfere with his or her ability to perform the job in a manner that will not immediately endanger the handicapped individual ... and the individual is able to safely perform the job over a reasonable length of time.

Cal.Code Regs. tit. 2, § 7293.8(e).

In a case similar to Jimeno's, the Fair Employment and Housing Commission found that prophylactic preclusion from tankerman duties was appropriate for a seaman with recurrent low back strains and a history of severe degenerative disc herniation, because medical testimony established that further injury was "inevitable" and a "daily risk." *Department of Fair Employment and Housing v. Harbor Tug and Barge Co.*, FEHC Dec. No. 92–02, 1992 WL 223888, *13 (Cal. F.E.H.C., February 20, 1992). In Jimeno's case, Dr. London's assessment may support a similar evaluation to establish this prong of the "danger to self" defense. However, the employer must also show that there were no "available reasonable means of accommodation which would, without undue hardship to [the employer], have allowed complainant to perform the essential job functions ... without danger to himself." *Harbor Tug*, 1992 WL 223888 at *14. As noted *supra*, "reasonable accommodation" includes:

Job restructuring, reassignment or transfer, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.

Cal.Code Regs. tit. 2, § 7293.9(a)(2). Within the reasonableness and undue hardship limits, the regulations "contemplate not only that employers remove obstacles that are in the way of the progress of the disabled, but that they actively restructure their way of doing business in order to accommodate the needs of their disabled employees." *Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956, 961 (N.D.Cal.1994).

The evidence is mixed on this issue. As already discussed, the CBA establishes a bidding process for employees who wish to change job positions. After placing Jimeno on medical leave, Mobil did offer vocational rehabilitation training as part of its assumed responsibilities under workers' compensation provisions. Mobil's response to the complaint before the Department of Fair Employment and Housing asserts that Mobil performed a second job analysis on another position, but concluded that the job required the same weight lifting and bending activities as his mechanic position.

On the other hand, Mobil did not respond to Jimeno's letter requesting consideration for a supervisory position, even though the evidence suggests that Mobil had initiated an evaluation process for that purpose before Jimeno's back pain episode. Also, Mobil's Long Term Disability Plan suggests an unexplored possibility of providing other work to employees in some situations, because it indicates that "[f]or the first 24 months, disability means complete inability to perform the duties of employee's regularly assigned work with Mobil Oil *or work with Mobil which entitles employee to comparable pay*." (emphasis added). Note that the seniority preservation provisions of the CBA apply when an "incapacitated" employee has been transferred or temporarily assigned to other jobs, again suggesting that Mobil has managerial flexibility to take such actions to accommodate employees with disabilities.[13] Further-

---

13. Article III, paragraph 29 states that: Employees in the bargaining unit transferred or temporarily assigned to other jobs within the bargaining unit but outside their departmental ladder due to incapacity caused by illness, industrial accidents, or non-industrial ac-

1535

more, Mobil's reliance on a policy of routinely terminating employees with work restrictions based on the mere assertion of inability to modify the job description, absent supportive evidence, is facially inadequate. *Compare Ackerman,* 860 F.2d 1514, 1520 (9th Cir.1988) (finding that the employer's assertions that no accommodations were available were speculative where the record "does not indicate that the Company tried any of these means of accommodation with Ackerman"), *with Harbor Tug,* 1992 WL 223888 at *14 (finding that evidence of rotating assignments and equally strenuous duties on all types of barge supported the employer's defense of inability to accommodate) *and General Dynamics,* 1990 WL 312873, at *9 (finding that evidence of a small custodial operation that could not accomplish its tasks if one member were placed on permanent light duty supported the employer's inability to accommodate).

Because Mobil has presented sufficient evidence to present a genuine issue of material fact but has failed to establish this defense as a matter of law, we also remand this issue to the district court for jury determination.

### CONCLUSION

We affirm the district court's ruling that Jimeno has established a prima facie case under the FEHA. However, we reverse the court's finding that the LMRA preempts Jimeno's state-law antidiscrimination claim. We affirm the court's conclusion that California's workers' compensation provisions provide the exclusive remedy for work-related injuries; but we find a genuine issue of material fact regarding the work-related nature of the conditions that justified Jimeno's work restrictions. Therefore, we vacate and remand to the district court the question whether Mobil terminated Jimeno solely because of the non-work-related developmental defect. We also remand for decision below Mobil's affirmative defense of reasonable accommodation. Because we are remanding these issues, we decline to calculate Jimeno's claim to compensatory damages, or rule on whether punitive damages are appropriate, believing that such fact-based issues are bet-

cidents shall, when returned to their former duties or departmental ladder, be credited with

ter addressed by the trial court. We also decline to reach all evidentiary issues because of our remand. Accordingly, we affirm in part, reverse in part, vacate in part, and remand for further proceedings in accord with this decision.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.

ladder seniority for the entire period of absence.